When it comes up, finish your sentence, put a period at the end if you need more time. Look for a little eye contact with me, but we would like you to finish that one sentence and then I would say having paced yourself where you could get to that. First case we have today, Cantu v. Schmidt. We'll start with Mr. McGinnis. Are these yours? Are these yours or are they? I don't know. Go ahead. Good morning, everybody. Opposing counsel in the court. My name is Kelly McGinnis and I'm from Edinburgh, Texas. It's my honor to be here to speak to you all for a few minutes about this case of Cantu v. Schmidt. Just a disclosure. I'm also from Edinburgh, Texas, but it will not affect my ruling one way or the other.        Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.   All as well, judge. These days you get a chance. All as well in Edinburgh today, I hope. All as well, judge. We're doing very well down there. Thank you. When I was preparing for oral argument in this case, I was trying to figure out how do I approach this? How do I address this with the court? What I kept coming back to is, let's talk about, there's a couple of major cases that circle around this issue. The issue, of course, is, is this lawsuit for malpractice against the debtor's prior bankruptcy counsel, is that an asset of the estate or not? That's why we're here. When I'm trying to make a decision on how we get there, I look at the major cases involved that the Fifth Circuit has already had. Of course, initially, we had the Swift case. The Swift case was decided back in 1997, and that case held, of course, that damages are prerequisite to a cause of action, and without damages, there is no injury to remedy. If the court recalls, in the Swift case, the issue was a retirement plan. The retirement plan was allegedly defective. The court set forth that there were two problems with the retirement plan. One is that Mr. Swift lost his tax advantages under Keogh and the IRA, and two, he lost his bankruptcy exemptions under Texas law. The Fifth Circuit, back in 1997, concluded that if either of these damages occurred pre-petition, the cause of action against State Farm accrued pre-petition. That seems to me, and one of the difficulties of this case is in Swift, as you're just describing, it was clear what the harm of the malpractice was. It was this retirement plan. Try to help me with explaining what exactly was the malpractice here, because the problem is we have this malpractice pleading that gets filed, alleging all kinds of improper conduct, and then there's a settlement, but it's hard to figure out what exactly was the malpractice, what the injury is. How would you describe? Well, Your Honor, I would describe it as kind of like being in an airplane. The attorney was the pilot of the airplane, the bankruptcy attorney. He was flying that airplane. As long as he avoided running into the mountain, everything was fine and dandy. He might have been late to a hearing. He may have done a terrible job here. She may have done a terrible job here or there. She might not have been prepared for a meeting. She might have seen an inexperienced person over there. All these things, as long as the plane stayed in the air, she was okay. But the bankruptcy court said the whole bankruptcy was infected with this malpractice, so basically the plane didn't stay in the air. The plane didn't stay in the air once there was a conversion. When the bankruptcy was converted to Chapter 7 and the debtor lost all ability to reorganize his assets, that's when the plane hit the mountain. But weren't the debtors kind of co-pilots in this case? I mean, if you look at the allegations that are made, the Cantus are saying if the lawyer hadn't handled it this way or advised him or whatever, they would have had a chance to make corrections. But they signed all these pleadings. I mean, it wasn't like you're sitting in row A7 and you don't know what the control tower is telling the pilot. The pilot prepares a petition, has all this stuff, and the Cantus go ahead and say that's right, and they sign off to stuff that's not correct. So it's not like they're just a passenger on the plane. Your Honor, I appreciate exactly where the Court's coming from with that comment. And what I would say is this, is that, like we go back to some of the other cases here, like the Wheeler case, for example, that the Fifth Circuit decided. In that case, the attorney, what he did wrong was he prepared bankruptcy pleadings that were fraudulent. They concealed assets. At the time he prepared them and at the time the debtor signed them, right then and there, there was a problem. And it wasn't that they got sued. It was that the fellow, the debtor in bankruptcy, got indicted five years, less than five years later. That happened later. Why? That happened post- But if you look at the analysis of how the Court's looked at it- Well, it did two things, though, and I'm glad you brought up Wheeler, because I don't know whether part of Wheeler was correct, but nonetheless, they used the approach in Wheeler in an analogous case, and they used the approach, and then they use a different, then they have analysis that is maybe inconsistent with that approach, but they say it fits in line with the approach that you're attacking. So why isn't Wheeler binding on us? Because in Wheeler, Your Honor, the act itself was an instance of, the act itself was unlawful. Filing fraudulent bankruptcy schedules right then and there. At the time it happened, the time that the attorney knows it, it was unlawful, and at the time that the person signed it, the debtor signed it, they knew whether or not they had the assets, so they knew they were lying. So right then and there, the act- And what was the negligence in this case? What was the- Well, if I- I'm sorry. Pete, if I could kind of focus on that, and making the analogy to Swift, according to the Bankruptcy Court, among the items of malpractice was advising, not advising the canteens to withdraw their ill-advised bankruptcy in the first place. We're looking at when this injury could be said to have been established. So that is suggesting well before the bankruptcy was converted. Failing to file a motion for use of cash collateral until 33 and 75 days after the filing. So that suggests something that's occurring during. But to me, one of the most analogous things is failing to advise the canteens about actions such as giving gifts to relatives prohibited by the Bankruptcy Code, matters that are set well before the conversion of Chapter 7. And if there's an injury that arises from that, it already exists unless you undo the gift. Isn't that analogous to Swift? Well, the thing is, is you've got to look at when did the damage happen? Because there were all these little things that, these acts that contributed to malpractice, but they all occurred at a certain time. But the actual hammer, the actual whammy, the actual punishment, the actual problem, the actual flying into the mountain, as I referred to earlier, was when the case got converted. Prior to the conversion of the case to Chapter 7, anything could be redone. Well, you're looking at it from your client's personal bottom line, their personal interest. But in bankruptcy, you can have Chapter 11 malpractice that injures the estate. And those lawyers are really there for the debtor in the bankruptcy. So I'm not sure it's, you might be right that their individual interest was only affected when it was converted. But I think we have to look at whether, before it was converted, whether there was an injury to the estate from this lawyer's misconduct. The analogy that I would also, thinking about how to approach this case and try to present my argument on it, is thinking about somebody driving poorly. If I go and put a bag over my head and I drive down I-10 here, and I don't hit anybody, it's certainly not a very bright thing to do. It's certainly negligent as all heck. But, if I don't hit anybody, the damage is having accrued. And that's what we had here. We had these acts of these little problems, not showing up to the hearings on time, not being prepared, making bad decisions. All those things contributed along the way, but they could always be pulled back and they hadn't actually damaged Mr. Cantu and Roxanne Cantu's wife until such time as the case actually got converted. Didn't the gifts damage the estate, giving these gifts and taking them outside of the estate? I mean, doesn't that deplete the assets of the estate? The action that the court, it does deplete the assets of the estate, but the action that the court found was that the failure about advising them on that, and there's no mention that what was recovered into the estate. So I look at these cases and I keep coming back to this issue about, is the act itself unlawful? Going back to the Wheeler case, filing false pleadings, filing false schedules where somebody's verifying what assets you had, concealing assets, right then and there, that act is unlawful. But if we go to some of the other cases, if we go to Swift, Swift had the issue with State Farm, but they also had the connected issue with the attorney. And if we go back and look at Swift, they say that, well, the action of the attorney and losing the objection, the exemptions to the property under Texas law, that accrued post-petition, if we look at what we held in Swift. So we have to try to harmonize all these issues. And then we come back to, well, let's apply Lamell. I want to speak about Lamell for a minute or so. Well, let me ask you, what exactly is the difference under 1115 when we're looking at what is the property of the estate? Is it your position that if the cause of action accrues, if we use accrual basis, the cause of action arises at the moment of conversion, that that's too late, that it must have been a cause of action in property of the estate prior to the conversion? Yes, that is our position. Is that because of the language 1115, or is that because of something else? That's because of the language that we see in one of the court's opinions. It talks about pre, what exists at the time of the filing. What exists at the time that, what existed at the time that the case was, that the problem happened. And that's why, invariably, at some point in time, Lamell gets discussed on this type of a case. And, of course, Lamell was the mobile home fire case where, in 1983, the bankruptcy plan was confirmed. But then, two years later, Christmas Eve, 1985, a mobile home fire erupts and two people are killed. Less than 30 days later, a lawsuit is filed, and the debtor's successor entity says, hey, we've already been discharged from this. And, of course, they talk about the middle ground approach. Let's apply the middle ground approach. But Lamell is not controlling, because Lamell specifically said that they left open the question of what effect the pre-partition privity would have. The language is very clear that they weren't deciding there, so that's basically what we're here for today. We have pre-partition privity, and does that, in itself, that Lamell itself is not controlling, because it left open that question. Both Lamell and Piper are future claims against the debtor by individuals not yet identified, poorly constructed Piper aircraft, or the Lamell situation. What we have here is a claim by the debtor themselves, himself, against professionals that were employed by the debtor. What do you make of that distinction? Well, I think you got to look at, you go back to the idea of when the cause of action accrued. And at all times that Mr. Cantu was in control of his estate, prior to the appointment of his Chapter 7 trustee and prior to conversion, he could not have brought successfully a malpractice action against his attorneys, because they could still have the ability to work out the problems. It was only when the case was converted that he lost that ability to work out the problems. So we look at Lamell, and we look at Swift, and the issue becomes, well, where are the damages? When did the damages accrue? And as I just stated, Mr. Cantu could not have sued his counsel beforehand, because he had no damages. The case was still ongoing. It was still possible to pull it out of the problems and successfully get a plan of reorganization. It seems like it's just a fairly hypothetical exercise for us to figure out when the damage occurred, again, because there was this settlement in the malpractice case with these broad allegations. I know this was done. I think there were cross motions for summary judgment. I mean, is there potentially the need for more of a record on what actually was the effect of the malpractice that might need more fact-finding? I mean, the Court could do that. There was extensive . . . I mean, the opinion by Judge Isgur, the bankruptcy judge, he set forth the eight issues that he believed constituted . . . you know, that the plaintiffs were alleging that the debtors below were alleging as acts of malpractice. I think that . . . He didn't find what malpractice had occurred, did he? No, he did not. He found that there had been a settlement, that basically there had been a tendering of policy limits of $300,000 by the insurance company for the defendant attorney. So, if an injury could have arisen from some of the claims, there's never been a finding that that injury occurred. That's correct. It could have arisen prior to bankruptcy conversion. There's been no finding that occurred. That's correct. No claim was asserted prior to the bankruptcy conversion. So it was only at that time. I'm in my last minute here, and I'm going to look for that red light, but I wanted to answer any other questions you may have. I've got five minutes in rebuttal, and I guess I will . . . unless the Court has any more specific questions for me at this time, I will save that for rebuttal. All right, then. Thank you, Counsel. Please, the Court. My name is Glenn Ayers, and I'm here representing Michael Schmidt, the Chapter 7 trustee in this case. To me . . . Is Mr. Schmidt here? Mr. Schmidt is right here. Yes, Your Honor. He is a member of the Bar of this Court as well. Welcome. If the Court please, it seems to me that to address Judge Costa's comment first is appropriate. I think a review of the findings entered by the District Court and by Judge Isgur, the bankruptcy judge who tried this adversary, together with the stipulations in the detours pleadings, do provide an adequate factual record of the events. The factual record that the debtor has stipulated is that a series of events occurred between the date of the filing of the bankruptcy petition under Chapter 11 and the date of the conversion. Those events are serious malpractice claims. The dates of those events are, without a doubt, before conversion. With that, I will . . . How do you handle the claim that, however, no actual damages had occurred, therefore no claim had accrued until such time as the conversion happened? How do you handle that aspect of the argument? Judge Melveni, I handle it this way. Each of these events would have been obvious to any debtor, particularly one with a law degree, an experienced trial lawyer. Each of these events was a nail in the coffin of his Chapter 11. Each of these events, but did any of those events mean that a cause of action had accrued? Yes, sir. One of the events that the debtor asserts is that Ms. Stone was not the debtor's first lawyer. Ms. Stone got into the case after the case was filed, and Ms. Stone did not immediately advise him to dismiss the case. The debtor and Mrs. Stone, says the debtor, should have known this case was going nowhere from the beginning. So the cause of action certainly accrues, and the damages are beginning to accrue. What are the damages, attorneys please? What are the damages in this case? It's at that moment. There should never have been a bankruptcy in the first place. What are the damages if that's all we have? Well, in the first place, you're not allowed to dismiss a Chapter 11 without the permission of the court, and essentially the court overruling the opposition of any creditors. It's not easy to get out of a bankruptcy case, but if you got out of the bankruptcy case, you would be back in control of all of your assets. You wouldn't have to worry about the events that become identified even later. For example— What I'm asking is, maybe that's what you're telling me that's what the injury is, but let's say all that ever happened here is there should never have been a bankruptcy case filed at all, and it stops, and all the things you just talked about occur, and the bankruptcy, Chapter 11, is indeed terminated. Can a cause of action be brought at that stage against the attorney who claimed to be brought, and is the claim strictly the attorney's fees that maybe were not even paid? It depends on what the other elements of damages are. I don't know what Cantu had lost control of or everything else, but the event caused the damage, that is, the failure to get out of bankruptcy. The other events that cause damages to Cantu, let's look at the failure to advise Cantu about fraudulent conveyances. Those accrue, those damages accrue when Cantu is forced to attempt to recapture fraudulent conveyances to friends and family. I don't know how you value that, Judge Costa, but that's a damage element. That's not just a cause of action. The one that bothers me, I guess . . . Let me ask. We're still looking at whether there is a claim yet that could have been made against the attorney. Let's say those gifts, we're looking just at the gifts to family members. If in fact, the attorney wised up and said, you need to get those gifts back, until we've converted, that's still a possibility, it seems to me, and are there any damages if in fact, the attorney does succeed in getting the gifts returned, or the gifter does? Then, if the attorney succeeds in getting the gifts returned, there is no, I suppose, injury. But the question you should ask is, what is being injured here? Not Mr. Cantu, but the Chapter 11 estate is being injured by these events. And if he gets them back, let's say he gets them back, they're going to be property of the estate anyway. They're going to be property of the Chapter 11 . . . That's right. If he were able to get back, for example, the use of cash collateral, which to a bankruptcy lawyer is a big deal, the use of cash collateral, if that had not happened, or if that cause of action were asserted in the Chapter 11 case, then it would bring assets into the Chapter 11 case. What I was going to try to conclude with today was, I think, nothing focuses the mind like the prospect of a hanging, and somehow, I wish my brief had focused on the idea . . . Is this the hanging appearing in front of us? This is the hanging period. It's always the hanging period. But Judge, if you focus on what was injured, it was the Chapter 11 estate that was injured by all of these things. It's his right to not file a Chapter 11 existed before the conversion. It's his right to try to get out of the Chapter 11. Or to not even file it, because he's saying, I shouldn't have filed it. Well, if he hadn't have filed it, that right that he's complaining about, that he lost, that he was damaged, existed before any filing existed. It is not binding on the Fifth Circuit. It was an unreported case, but in one of the cases cited, there's a reference to an unreported Fifth Circuit case involving the debtor's attorney. You know you're getting old when you know the debtor's attorney. The debtor's attorney in that case was alleged to have failed to advise the debtor not to file bankruptcy because his IRA was not exempt. In that case, the court opined that the injury occurred pre-petition. The attorney's failure to advise occurred pre-petition. Here the attorney's failure to advise occurred pre-conversion. Same sign, but different. Meaning the malpractice occurred, the bad legal advice was given prior to the filing. Is that the analysis? But the malpractice claim doesn't exist unless there were damages. I think that's what Judge Kostin was sort of asking. Where is the evidence, where is the discussion of damages? I think it's there, Judge. But the answer is all of these things occurred in the Chapter 11 estate. I think I agree with you that if there's an injury to the estate, that means the estate would have had a claim pre-conversion. But specify what the injury to the estate was. I'm still having trouble grasping specifically what claim could they have brought pre-conversion. I think you're right. The statute, 1115, of course, is after many of these other cases. It's a new statute, an 05 statute, and this is an 08 case. If you look at the statute, it says acquires, property that the debtor acquires. And I think what the debtor acquired, the Chapter 11 debtor, not Mr. Cantu, acquired was the right to bring an action for the failure of Catherine Stone's law office, to advise him to try to get out of bankruptcy, to advise him to do things that would have led to a confirmable plan, to help him propose a confirmable plan, to sum that up in the three. And the estate was harmed by all those things how? The Chapter 11 estate was harmed when Mr. Schmidt took over as Chapter 7 trustee. He got all of the assets that the Chapter 11 estate had, had acquired post-petition. In this set of claims, based upon this series of events, is a post-petition, pre-conversion set of acquisitions that came into his hands. Mr. Cantu, post-conversion, sues Ms. Stone. That case is removed to the United States Bankruptcy Court, and the United States Bankruptcy Court then adjudicates it. The case was settled, so there's no fully developed record of Event A caused Event B damages. There's no clear record of the quantum, if you will, Judge, of the damages. With that, I think I've done what I can to elucidate the points that Mr. McGinnis brought out, but does the Court have anything else for me? The complaint wasn't just for malpractice. There were all kinds of fraud allegations that the attorneys misrepresented their experience. And again, how do we know was the settlement all for malpractice? Because it seems to me the damages for the fraud would have been recovering attorney's fees, among other things, that were paid under fraudulent pretenses. And that would have clearly happened pre-conversion. But again, what exactly was the concession of liability? Was it narrowed down for our purposes to just a malpractice case? I think I'm not going to be able to respond to that as accurately as I would like to. You would go back to the agreed judgment against Catherine Stone, the settlement agreement, and I don't think I even have that in the courtroom. But that document, which is part of the record, would elucidate the Court's question, but I'm at a loss. Counsel, but none of these fraud claims or whatever were a basis for the actual conversion. What was the actual basis for the conversion? The basis for the actual conversion, as the record indicates, was the failure to propose a confirmable plan. If I could get down to a nutshell, your argument would be, when you have a lawyer, if you're going to look at when . . . you look at the duty that was violated, the right of the client to have a counsel give him good advice and provide legal services, that that duty is breached and you have an accrual at the time of the breach of the duty, that you shouldn't have to wait until you have a particular harm that arises out of it? The counsel seems to somehow try to distinguish between the accrual of the claim and the damages from the claim, and I must admit, I find that odd. Essentially, we have here a person who came into a bankruptcy court who claims, and there's a settlement, that his lawyer failed him in a number of grievous ways. She shot him five or six or seven times, and the case was settled, so that is admitted. She caused these injuries to him. He says, but I didn't die until the case was actually converted. When did the cause of action for those injuries accrue? The cause of action, it seems to me, accrued pre-petition. The injuries accrued pre-conversion, I'm sorry, pre-conversion, and the statute says, if you acquire a right, property, if you acquire property during the pendency of an 11 and the case is converted, the claim is an 11 claim. It's a pre-conversion claim. Well, but the argument about the injury is you don't have a cause of action until all the elements of that cause of action exist, and if you don't have an injury, if, in fact, you have negligence on the part of the actor that can be corrected before any injury occurs, the cause of action has not yet developed. Now, some of the case law is talking about the discovery rule. It's one thing not to know about the injury. The surgeon who leaves a medical pad inside the patient and gets sewn up and doesn't get discovered until months later. That cause of action fully exists. It's just on the discovery rule. The plaintiff doesn't yet know about it. Well, that's not what we're talking about here. What we're talking about is, except we're trying to discover it, I guess, up here. When was there an injury? I know all these different theories. You've explored that, but I think that's the question we have to answer. You don't have a very good fit, I think, with what's out there, the methods. It's not a very good fit with the case law that's out there. Yes, Judge Benavides. How about the Wheeler case, though? The Wheeler case seems to be analogous. I guess this is a friendly question. You'll find out. Make your best argument on Wheeler. Your Honor, if we go to Wheeler and we ask, in Wheeler, when did all of these injuries occur, we have a definite date. We know what happened in Wheeler. I'm not sure quite where you're going with the Wheeler question, but I would put it a different way. I would say that if you look at these accrual of events, you knew that there was not going to ever be a confirmable plan. So I'm changing your friendly question a little bit. The five shots meant that the injury had occurred to any objective observer. If you want to put it in those terms, the injury had occurred. There was never going to be a confirmable plan, except perhaps just some sort of straight liquidation plan, that would leave Mr. Cantu in possession of his assets. He had done all sorts of bad things, or his lawyer had let him do all sorts of bad things in the bankruptcy. And so when you got to confirmation, and this case was appealed to the Fifth Circuit on the basis of whether or not the confirmation was properly denied, whether or not the conversion to Chapter 7 was proper, anybody knew that there was going to be a conversion of the case at some point in time, as Mr. Cantu ran out of rope. There had been too many events. When Catherine Stone came in and tried to propose a confirmable plan, it just didn't happen. I dodged your question, because I wanted to get to that point. Wouldn't the attorney's fees paid out of the estate, when it was in Chapter 11, for this representation that was clearly ineffective and negligent, wouldn't those at least be damages that would have given rise to a cause of action pre-conversion? Yes, sir. Yes, sir. And that would have been clearly property of the estate, because that would have come out of the estate. It would be getting back what was taken out. It would be getting back. Yes, sir. Was it just a debt, or was it actually paid prior to conversion, the attorney's fees? There were sums paid to Ms. Stone at the beginning of her representation and during her representation. I don't know how much. I don't know how much her attorney's fees had accrued as of the date of the conversion. I don't know what her claim was post-conversion. All right, counsel. Thank you. Thank you. May it please the Court. After listening to opposing counsel's remarks, I had a couple of observations, and I'd be happy to answer any questions the Court may have. Counsel says that the damages were to the Chapter 11 estate, but the funny thing is the Chapter 11 estate never filed anything. These were damages that Mr. Cantu and his wife filed a lawsuit. Mr. Cantu and his wife filed a lawsuit. If they hadn't filed a lawsuit, the limitations would have run on the claim. The trustee eventually intervened. Mr. Cantu's lawyer was the one who fought this thing out and obtained the settlement, and then the issue became, who did the money belong to? So there were never any pleadings filed that asserted that, hey, we, the Chapter 11 estate, have been damaged by this. It was, hey, Mr. Cantu has lost several million dollars' worth of assets. I disagree with some of the statements regarding it, and the record will speak for itself, but some of the statements, there was not clear. Mr. Cantu had a couple of hearings on confirmation, and the Court had indicated that certain tweaks needed to be made. The tweaks were not made by Ms. Stone, and the case got converted. So I dispute whether there was no hope for a confirmation. Cases, many times, are dismissed or withdrawn, dismissed. That could have still been done, and until such time as the actual conversion took place, once the conversion took place, Mr. Cantu and his wife lost several million dollars' worth of assets. That was the . . . Mr. McIntosh, I have . . . you've got a really good argument, and I understand your argument and the fact that there's not a really good fit here, but going along with Judge Costas, you know, there's a lot of allegations about what the negligence is or the malfeasance is on the part of the attorneys, and so we don't really know in the settlement, you know, what was the touchstone of the settlement, because, you know, we don't have any development of that. But, for instance, but if we take just one of the allegations, one of the allegations was that it didn't advise me about fraudulent conveyances. Well, if they would have tried to set aside a previous payment as a fraudulent conveyance, and they would have done that prior to the conversion, that would have belonged to the estate, right, because it was pre-petition, you know, something that was done. And so how has something that's pre-petition, that existed pre-petition, that you're claiming that the lawyer didn't tell you about, that you would have gotten money to the estate, now if you wait until it's converted to a seven, it's no longer property of the estate. It now becomes the property of the debtors. So, you know, I could see at least one instance where the conversion itself now changes something that was clearly property of the estate, and it becomes the property of the debtor. So if the lawyer, if they'd have gone and the lawyer had have told them, and they have have done what the lawyer, that they say the lawyer should have done, that clearly would have been property of the estate. But by waiting until the conversion, it's now property of the debtor. Well, but the thing is, where we're going here is we're getting away from the basic rule of tort law, and that is, what do you have for a tort claim? You've got to have, you know, duty, breach of duty, and damages. If you don't have all of them, you go to court, they're going to summary judgment you out. Hey, you don't have any damages. Sure, I drove down I-10 with a blindfold on, but I didn't hit anybody, nobody got hurt, there's no damages. So you've got to have damages. And what, in a bankruptcy environment, when there's a conversion, we take a snapshot. A snapshot. What are the assets? Click. We've got a snapshot. This is what's owned. This is what the bankruptcy estate. We don't follow Mr. Cantu around for the rest of his life, and if he has a car wreck three years later, suddenly the trustee steps in. We take that snapshot, and that snapshot is what tells us what are the assets of the estate. At the time that this snapshot was taken, it didn't happen. We didn't have the damages yet. We didn't have it until the conversion occurred. Without the conversion, there are no damages. The plane could have been righted. We could have avoided the flying into the mountain. Once you hit the mountain and the plane blows up, there's no more assets, and that's what happened here. Once there was a conversion, they were unable to undo any of the problems. The practice of law, people sometimes go late to court, get in trouble, do stuff, but that doesn't mean that they're opening themselves up for malpractice, maybe grievance, yes, but not malpractice. It's when there's a harm, you've got to have duty, breach of duty, and harm, and the harm did not accrue until such time as Mr. Cantu lost control of all his assets when there was a conversion. It's been my sincere honor to appear before you all. I thank you very much for your time, and may God bless each and every one of you. Thank you. Thank you, Counsel. Both sides, appreciate your trying to help us sort this out.